IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

RITA W. KENNEY )
 )
    Plaintiff, )
 )
    v. ) Civil Action No. CBD-10-1506
 )
MICHAEL J. ASTRUE, )
Commissioner, Social Security )
Administration, )
 )
    Defendant. )

## MEMORANDUM OPINION

Rita W. Kenney, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Before the Court are Plaintiff's Motion for Summary Judgment and Commissioner's Motion for Summary Judgment. The Court has reviewed these motions and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on February 9, 2006. R. 65. The Commissioner denied Plaintiff's claim on first review on May 9, 2006, R. 52-54, and on reconsideration on October 3, 2006, R. 51, 55-56. On November 15, 2006, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), R. 57, and a video hearing was held on December 13, 2007,

1

R. 21. On February 13, 2008, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act from September 15, 2004 through the date of the decision. R. 12-20.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520, and further explained below. *See*, *infra*, Standard of Review. At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 15, 2004, the alleged onset date. R. 14. At the second step, the ALJ determined that Plaintiff has severe impairments, including fibromyalgia and lumbosacral degenerative disc disease. R. 14. At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." R. 16. At the fourth step, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of sedentary work, and that Plaintiff is "capable of performing past relevant work as [an] administrative assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." R. 16-20. As a result, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 15, 2004, through the date of this decision (20 CFR 404.1520(f))." R. 20.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. R. 8. The Appeal Council denied Plaintiff's request on March 12, 2010, making the ALJ's decision final and appealable. R. 3-5.

# STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." (internal quotation marks omitted) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966))).

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505 (2007). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

# ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's condition, Pl.'s Br. 42, for six reasons:

> 1) The ALJ erred by not finding Plaintiff's depression to be a severe impairment, and the ALJ should have considered it at steps three and four of the evaluation process, Pl.'s Br. 25, 30;
>
> 2) The ALJ erred by not recognizing that Plaintiff's depression is part of her fibromyalgia condition, Pl.'s Br. 30, 35;
>
> 3) The ALJ should have recognized Plaintiff's "cervical disc disease" as a severe impairment and should have considered it at steps two, three, and four of the evaluation process, Pl.'s Br. 24-25, 30;
>
> 4) The ALJ did not properly consider as severe the combination of Plaintiff's fibromyalgia, lumbosacral and "cervical disc disease" with stenosis, and depression, and how that combination affects Plaintiff's ability to do basic work activities, Pl.'s Br. 29-31;
>
> 5) The ALJ did not properly evaluate Plaintiff's fibromyalgia and recognize its effect on Plaintiff's functional ability, Pl.'s Br. 31, 35-37; and
>
> 6) The ALJ did not have substantial evidence to conclude that Plaintiff could perform a full range of sedentary work and her past relevant work as an administrative assistant, Pl.'s Br. 37-42.[1]

For the reasons set forth below, the decision of the ALJ is affirmed.

## I. Substantial Evidence Supports The ALJ's Decision That Plaintiff's Depression Is Not A Severe Impairment.

Plaintiff argues that the ALJ should have found that Plaintiff's depression was a severe impairment, and then evaluated that depression at steps three and four of the sequential evaluation process. Pl.'s Br. 25, 30. The ALJ determined that Plaintiff's "medically

---

[1] Plaintiff also attempts to incorporate arguments that she made in her 14-page brief to the Appeals Council. The Court agrees with Defendant that this "attempted incorporation is an end-run around this Court's 50-page limit for memoranda." Def.'s Br. 9 n.3, 28-29.

determinable mental impairment of adjustment disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. 14. The Court finds that this decision is supported by substantial evidence.

The ALJ based his determination on the record, including Plaintiff's medical records. R. 14. He observed that Ivonne Herrera, M.D., a rheumatologist, had noted in October 2005 that "claimant's depression was improved and under better control ([ALJ] Exhibit 9F/3);" and that during a consultative, psychological examination with Eva K. Anderson, Ph.D. on April 24, 2006, Plaintiff "appeared moderately depressed when discussing her chronic pain and loss of employment, but her affect was unremarkable and she showed no psychotic features or extreme mood swings, and she was able to express herself well ([ALJ] Exhibit 7F/2)." R. 14-15.

The ALJ also considered and analyzed the four functional areas described in section 12.00C of 20 C.F.R. § 404, Subpart P, App. 1. R. 15. First, he found that Plaintiff has no limitation in her daily living activities as she "lives alone, takes care of her personal needs, cooks, does household chores, . . . runs errands," and takes care of her grandchildren. R. 15 (citing to ALJ Exhibits 4E, 7F, 12F; Plaintiff's hearing testimony). Second, the ALJ found that Plaintiff has no limitation in her social functioning because she "goes out in public to shop, run errands, and eat out[;] . . . . has relationship with her boyfriend[;] and spends time with family and friends." R. 15 (citing to ALJ Exhibits 4E, 7F; Plaintiff's hearing testimony). Third, the ALJ found that Plaintiff has no limitation in her concentration, persistence, or pace based on Dr. Anderson's conclusions that "claimant's capacity for understanding was average, her long-term memory was adequate, and concentration was fair for repeating numbers and doing simple arithmetic ([ALJ] Exhibit 7F/3)." R. 15; *see also* R. 206 (Plaintiff's concentration was only "mildly impaired"). The ALJ similarly noted that, in his Psychiatric Report, "Dr. [Glenwood]

6

Brooks documented that the claimant had more than adequate cognitive and memory functioning abilities even with her condition of fibromyalgia, and displayed good concentration and attentiveness ([ALJ] Exhibit 12F/2)." R. 15; *see also* R. 239-40 (In September 2006, Dr. Brooks reported that, for her age group, Plaintiff had a superior Processing Speed, a very superior Visual Memory functioning score, and near superior Working Memory score; she generally scored average to superior and very superior scores; and she was "quite capable and in control of [herself] emotionally and behaviorally"). Fourth, the ALJ found that Plaintiff "has experienced no episodes of decompensation" based on the facts that Plaintiff "has not had any psychological or psychiatric treatment, nor has she been hospitalized because of any mental impairment." R. 15.

The evidence cited by the ALJ is more than substantial to support the ALJ's decision that Plaintiff's depression was not a severe impairment. As noted above, the Court does not question factual findings if they were based on proper legal standards. *See Hays*, 907 F.2d at 1456. This case presents such a situation.

Plaintiff argues that her testimony in her disability report interviews, her testimony and the testimony of her fiancé at the hearing below, her doctors' reports, and the fact that she was taking anti-depressant medications provide sufficient evidence to show that her depression was severe under the regulations. Pl. Br. 25-31. The ALJ considered this evidence, however, and the entire record, and concluded that Plaintiff's depression "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe." R. 14. In so concluding, he also found much of Plaintiff's testimony to various doctors and before the ALJ to not be credible, which this Court cannot contradict. *See Hays*, 907 F.2d at 1456. Substantial evidence exists to support the ALJ's view that she can perform "basic work

7

activities" despite her depression. *Cf*. SSR 85-28, 1985 WL 56856 (1985) ("The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs.").

## II. The ALJ Considered Plaintiff's Depression In Evaluating Her Fibromyalgia Condition.

In association with her first argument, Plaintiff argues that the ALJ erred by failing to consider her depression as part of her fibromyalgia. The ALJ recognized, however, that Plaintiff had alleged that her fibromyalgic pain causes her depression, and considered her depression in evaluating her fibromyalgia and its effects on her ability to function. R. 17, 18. The ALJ simply did not find that *alone* the depression was a severe impairment, and, as discussed above, there is substantial evidence for that conclusion.

## III. The ALJ's Evaluation of Plaintiff's "Cervical Disc Disease" Complied With The Regulations, And Any Error Is Not Reversible.

Plaintiff argues that the ALJ erred when he did not find her "cervical disc disease" to be a severe impairment at step two and then consider it at steps three and four of the evaluation process. Pl.'s Br. 24-25, 30. There is substantial evidence that Plaintiff's cervical spine conditions were not severe, and even if they were, the ALJ's failure to consider them at step two is not reversible error.

In evaluating whether an impairment is severe, that impairment must meet the duration requirement in 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). Section 404.1509 provides, "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months." The ALJ recognized that Plaintiff obtained an MRI of her cervical spine in November 30, 2007. R. 18. That MRI "revealed a small osteophyte and disc complex at C3-4, moderate central canal stenosis from an osteophyte and disc bulge complex at C4-5 and C5-6, and severe stenosis at C6-7 with small central disc

8

protrusion ([ALJ] Exhibit 14F/7)." R. 18. Because Plaintiff had not experienced these conditions, or stated that she expected them to last, for a continuous period of at least 12 months prior to the ALJ's decision in February 2008, there is substantial evidence that these conditions are not severe.[2]

However, even were these conditions severe impairments, and the ALJ erred by failing to consider them at step two, that error does not render his judgment reversible. If an ALJ would have reached the same result "notwithstanding his initial error," the ALJ's decision should be affirmed. *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (Hall, J.) (majority only in the judgment). For example, in *Clark v. Comm'r of Soc. Sec.*, No. 2:09cv417, 2010 WL 2730622, *10-11 (E.D. Va. June 3, 2010), even though the "ALJ did not analyze whether [claimant's] cervical herniated discs . . . constitute[d] severe impairments" at step two, his error was not reversible because he considered the conditions in subsequent steps of the sequential evaluation and found that they did not render her disabled. *See also Jones v. Comm'r of Soc. Sec.*, No. 4:10cv75, 2011 WL 3273129, *14 (E.D. Va. June 9, 2011) ("Therefore, provided the ALJ here considered Ms. Jones' low back pain in subsequent steps of the five-step evaluation process, there is no reversible error. Even a cursory review of the ALJ's decision reveals that the ALJ did just that."); *Washington v. Astrue*, 698 F. Supp. 2d 562, 579-80 (D.S.C. 2010) (adopting report and recommendation stating, "To the extent, however, that the ALJ may have erred in finding Plaintiff's arthritis to be non-severe, Plaintiff has suffered no harm . . . . The undersigned agrees with other courts that find no reversible error where the ALJ does not find an impairment severe

---

[2] Later evidence, which was not presented to the ALJ, shows that on July 23, 2008, Ben Tacheron, M.D., a doctor with the Pain Management Service of Peninsula Regional Medical Center, gave Plaintiff a cervical epidural steroid injection and changed her pain medication. R. 276-77. It is unclear whether the injection and medication change solved or ameliorated her condition.

at step two provided that he or she considers that impairment in subsequent steps." (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006); *Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004))); *Pittman v. Astrue*, No. 5:08cv83, 2008 WL 4594574, *4 (E.D.N.C. Oct. 10, 2008) ("because the ALJ did not end his analysis at step two, but continued with the remaining steps in his disability determination, the ALJ's failure to set forth a specific finding as to the severity or non-severity of Claimant's back impairment did not constitute reversible error." (citing *Ottman*, 306 F. Supp. 2d at 839)).

Here, the ALJ considered Plaintiff's cervical spine conditions in determining her residual functional capacity and ability to work, and found these and Plaintiff's other conditions did not render her unable to perform sedentary work. *See* R. 16-19. Thus, even if the ALJ erroneously failed to find Plaintiff's cervical spine conditions to be severe at step two, that error does not require reversal of the ALJ's decision.

### IV. The ALJ Considered The Combination Of Plaintiff's Impairments.

Plaintiff also argues for reversal of the ALJ's decision because the ALJ did not consider the combination of Plaintiff's fibromyalgia, "lumbosacral and cervical disc disease with stenosis," and depression at step two. Pl.'s Br. 29-31. Under section 404.1523, an ALJ is required to "consider the combined effect of all of [claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." If the ALJ finds that the combination of impairments is severe, "the combined impact of the impairments will be considered throughout the disability determination process," and if not, the ALJ "will determine that [the claimant is] . . . not disabled." 20 C.F.R. § 404.1523.

The ALJ did not commit reversible error. At step two he determined from the record that Plaintiff's fibromyalgia and lumbosacral degenerative disc disease were severe. R. 14. The ALJ then discussed and evaluated at length the impact of Plaintiff's depression, and did not find Plaintiff's depression to be severe. R. 14-15. The ALJ did not discuss Plaintiff's cervical spine conditions at step two or explicitly discuss whether the combination of Plaintiff's impairments (including her depression and cervical spine conditions) were severe. Nevertheless, the ALJ continued to discuss Plaintiff's depression and cervical spine conditions in his evaluation of Plaintiff's residual functional capacity and ability to perform sedentary work. *See* R. 17-19. Thus, even if the combination were severe, because the ALJ continued to discuss Plaintiff's severe impairments and her depression and cervical spine conditions at later steps in the process, the ALJ's decision comports with the law. *See Mickles*, 29 F.3d at 921 (Hall, J.) (affirms the ALJ's decision because the result would have been the same even without the error).

**V. The ALJ Properly Evaluated Plaintiff's Fibromyalgia**.

Plaintiff next argues that the ALJ did not accurately assess her fibromyalgia and its effects on her functional ability. Pl.'s Br. 31, 35-37. In support of this argument, Plaintiff alleges that the ALJ "ignored . . . evidence in assessing and evaluating plaintiff's fibromyalgia" by "determin[ing] that plaintiff's depression was not severe and fail[ing] to otherwise consider it as a symptom of her fibromyalgia." Pl.'s Br. 35. First, as discussed above, the ALJ's conclusion that Plaintiff's depression was not severe is supported by substantial evidence. Second, the ALJ did recognize the relationship between Plaintiff's fibromyalgia and her depression. The ALJ noted that the pain from Plaintiff's fibromyalgia "causes fatigue and depression," R. 17, and that her rheumatologist prescribed medication for her depression, R. 18.

To further support her argument that the ALJ improperly assessed Plaintiff's fibromyalgia, Plaintiff asserts that "she had a history of fibromyalgia" and "has multiple tender points, . . . diffuse tenderness under the skin and on the skin, muscles, and joints," she does not sleep well and is anxious, has had problems with medications, and has pain of more than 6/10. Pl.'s Br. 36. The ALJ examined these factual considerations, in addition to others, in determining the effect of Plaintiff's fibromyalgia on her ability to work. *See* R. 17-19. The ALJ's decision does not indicate that he misunderstood the symptoms or effects of fibromyalgia.

Plaintiff next argues that the ALJ improperly discounted Dr. Herrera's opinions and Plaintiff's credibility. Pl.'s Br. 36. The ALJ did not discount Dr. Herrera's opinion. Rather, the ALJ discounted Plaintiff's descriptions of her symptoms. R. 17-18. The ALJ then concluded that Plaintiff has residual functional capacity to perform the full range of sedentary work based in part on Dr. Herrera's opinion that "her joints had good range of motion," Dr. Herrera's report that her symptoms had improved in October 2005, Dr. Herrera's rating of Plaintiff's multiple tender points as mild, and Dr. Herrera's finding that there was no evidence of active synovitis. R. 17-18. The ALJ's decision that Plaintiff was not credible is a factual conclusion based on factual disputes properly resolved by the ALJ. *See Hays*, 907 F.2d at 1456. The ALJ evaluated Plaintiff's fibromyalgia in accordance with the law.

**VI. The ALJ's Conclusions That Plaintiff Could Perform A Full Range Of Sedentary Work And Work As An Administrative Assistant Are Supported By Substantial Evidence**.

Finally, Plaintiff argues that substantial evidence does not support the ALJ's decision that Plaintiff could perform a full range of sedentary work and her past relevant work as an administrative assistant because Plaintiff cannot lift or carry ten pounds, stand or walk two hours of an eight-hour work day, or sit six hours of an eight-hour work day. Pl.'s Br. at 38. To begin, Plaintiff misapplies the law. The regulations do not require Plaintiff to be able to lift ten pounds

and stand or walk two hours of an eight-hour work day.  Rather, the regulations describing sedentary work require Plaintiff to lift "*no more than* 10 pounds at a time and *occasionally* lift[] or carry[] articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a) (emphasis added).  Further, SSR 83-10, 1983 WL 31251 (1983), cited by Plaintiff, states that sedentary work "should generally" include standing or walking of "*no more than* about 2 hours of an 8-hour workday."  (emphasis added).

Next, in support of Plaintiff's claim that she cannot lift more than ten pounds, stand or walk for more than two hours, and sit for approximately six hours of an eight-hour workday, Plaintiff provides her own testimony to various doctors, Social Security Administration personnel, and the ALJ.  *See* Pl.'s Br. 38-41 (for examples, Plaintiff testified that her pain keeps her awake, it impairs her concentration, she cannot sit comfortably for very long; Plaintiff informed Dr. Herrera that she had multiple tender points, had pain from 6/10 to 10/10, had "good days and bad days," had "pain all over her entire body," "had pain with clothing rubbing against her skin," had "intence [sic] and stabbing" pain; Plaintiff complained to Dr. Brooks of her pain and "inability to perform activities without a great deal of effort;" Plaintiff informed David M. Roe, M.D. of Peninsula Orthopaedic Associates, P.A., of her pain and discomfort).  This evidence is problematic.  The ALJ determined that Plaintiff's testimony was "overstated, inconsistent with, and unsupported by, the great weight of the documentary medical evidence discussed" in his decision.  R. 18.  The Court cannot take issue with this factual determination.

There is more than substantial evidence to support the ALJ's decision.  The evidence shows that in her August 2005 and April 2006 visits with Dr. Herrera that Plaintiff had good range of motion in her joints, *see* R. 221, 226; she only had mild tender points and mild pain, *see* R. 221, 223; and she did not have synovitis, *see* R. 221, 223.  Fauzi Khalil, M.D. similarly noted

in March 2006 that Plaintiff was not in distress, only had "minimal lumbosacral spine tenderness," and "some muscle tenderness in the anterior aspect of the thigh;" and, although Dr. Khalil is not a rheumatologist, he concluded that Plaintiff's condition is not "severe enough to warrant disability." R. 195-97 (Dr. Fauzi's Medical Report). Dr. Roe found in November 2007 that although Plaintiff had "a decreased forward flexion/extension, right and left lateral rotation as well as left lateral flexion," and had "mild crepitation present," she had "no trigger points on the right or left paracervical area or right or left parascapular area," had "no atrophy of the musculature of the shoulder girdle area," had "good range of motion of the shoulders, elbows and wrists," was neurologically "intact," and had "full flexion/extension, right and left lateral rotation" of her lower lumbar spine. R. 250.

Additionally, Plaintiff's testimony contradicts her claim that she cannot handle sedentary work. Plaintiff testified that she lives alone, *see, e.g.*, R. 98; takes care of her personal needs, *see, e.g.*, R. 33, 98-100; runs errands, *see, e.g.*, R. 31-32, 98; spends time playing computer games, *see, e.g.*, R. 33, 98; spends two to three days a week taking care of her grandchildren, *see, e.g.*, R. 30-31, 99; watches television, *see, e.g.*, R. 33, 98; drives, *see, e.g.*, R. 101; and can walk a quarter of a mile, R. 36. Plaintiff admitted that has been lifting her grandchildren, who likely weigh approximately, or more than, ten pounds. *See* R. 30-31, 259. The Court assumes that she has to stand and walk during the nine hours that she is babysitting. Further, the ALJ's decision that Plaintiff is exaggerating her condition is supported by her admission that she quit her last job with Roadway Express in part because of her boss, not only because of her fibromyalgia pain. *Compare* R. 29 *with* R. 206 *and* 238-99. As a result, there is substantial evidence in support of the ALJ's decision.

Plaintiff argues that "new" evidence, not provided to the ALJ, also supports a finding that Plaintiff is disabled and the ALJ erred in concluding otherwise. She provides two letters from Dr. Herrera from December 2008 and September 2009, presumably written in support of Plaintiff's request to be excused from jury duty; a June 2008 Physical Residual Functional Capacity Assessment Form allegedly signed by Dr. Herrera (the signature is illegible); July 2008 treatment notes of Dr. Tacheron regarding Plaintiff's neck pain; and treatment notes of Michael Crouch, M.D. from 2001 and 2002.

The Court must consider the record as a whole on appeal. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). In this case, the Appeals Council specifically incorporated the September 2009 letter from Dr. Herrera, the June 2008 Physical Residual Functional Capacity Assessment Form, and Dr. Crouch's treatment notes. R. 6-7. The Appeals Council did not incorporate Dr. Tacheron's treatment notes and Dr. Herrera's December 2008 letter. R. 6-7. It is possible that each was included in the record, but simply not included in the exhibits list. Regardless, these additional documents do not render the ALJ's decision incorrect as they are largely cumulative of the evidence previously provided, and some of them include information older than the disability period.

Dr. Herrera's letters reiterate that Plaintiff has fibromyalgia and that Plaintiff has complained of pains on her body and problems with concentration and sleeping. R. 265-66. The one new piece of information in these letters is that Plaintiff "is not able to keep the same position for more than 20 minutes because of the muscle and joint pain." R. 266. It is not clear, however, whether this was the doctor's observation or Plaintiff's allegation. In addition, there is no other document that corroborates this information. The only evidence from this time period (other than Plaintiff's testimony before the ALJ, which the ALJ did not find credible) is the June

2008 Physical Residual Functional Capacity Assessment Form. The doctor who examined Plaintiff admits, however, that he only examined her for fifteen minutes, not long enough to test Plaintiff's statement that she could not sit for more than 20 minutes. This "new" evidence is, thus, not convincing.

The third "new" document is a June 2008 Physical Residual Functional Capacity Assessment Form allegedly signed by Dr. Herrera. R. 268-74. This report reiterates the complaints made by Plaintiff, which the ALJ already evaluated in reaching his decision. What is more, the doctor only examined Plaintiff for fifteen minutes, "so some of the answers are based on patient's report," rather than an independent medical examination. R. 269. Given that the ALJ found that Plaintiff was overstating her condition previously, and this new form mainly contains statements previously made by Plaintiff, the Court does not find that this form weakens the ALJ's decision. Similarly, because Dr. Tacheron's treatment notes, R. 275-77, do not provide any additional, persuasive information, they do not change the Court's analysis of the ALJ's decision.

Finally, Dr. Crouch's notes from 2001 and 2002 are more hurtful than helpful to Plaintiff's appeal because Plaintiff described experiencing pain and other symptoms, yet Plaintiff was able to work during that time. *Compare* R. 278-83 *with* R. 86 (Plaintiff reports that she became unable to work in September 2004), *and* R. 70 (in 2002 Plaintiff reports second highest earnings of her lifetime, the highest being in 2003). As a result, despite the "new" evidence, there is substantial evidence in support of the ALJ's decision regarding Plaintiff's residual function capacity and ability to work as an administrative assistant.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Commissioner's Motion for Summary Judgment.


October 20, 2011                                           /s/
                                                    Charles B. Day
                                                    United States Magistrate Judge




CBD:MKH